IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY,         Plaintiff, <br><br> v. <br><br> DAVE KNECHT HOMES, LLC and <br> BANKERS STANDARD INSURANCE <br> COMPANY a/s/o VANN A. AVEDISIAN, <br><br>         Defendants. | Case No. 20-cv-03177 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Now comes Plaintiff, Nautilus Insurance Company ("Nautilus"), by and through its attorneys, Dana A. Rice and Adam P. Joffe of Traub Lieberman Straus & Shrewsberry LLP, and for its Complaint for Declaratory Judgment against Defendants Dave Knecht Homes, LLC ("DKH") and Bankers Standard Insurance Company a/s/o Vann A. Avedisian ("Bankers Standard"), it states as follows:

### THE PARTIES

1. Nautilus is, and at all relevant times has been, a corporation organized under the laws of Arizona with its principal place of business in Scottsdale, Arizona. At all times relevant hereto, Nautilus was an insurer whose policies may be sold in Illinois.

2. DKH is, and at all relevant times has been, a limited liability company organized under the laws of Illinois with its principal place of business in Hinsdale Illinois. The members of DKH are as follows:

    a. Auburn Holdings, LLC, a limited liability company organized under the laws of Illinois, and whose sole member is Dave Knecht, a citizen of Illinois; and

1

  b. Lamar Holdings, LLC, a limited liability company organized under the laws of Illinois, and whose sole member is Mario Cirignani, a citizen of Illinois.

3. Bankers Standard is, and at all relevant times has been, a corporation organized under the laws of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania.

## JURISDICTION

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) in that the citizenship of the parties is diverse and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Specifically, the case relates to an insurance policy providing well in excess of $75,000 in coverage, and the underlying lawsuit seeks damages in excess of $75,000.

## VENUE

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events giving rise to this litigation occurred in this judicial district, and because at least one of the defendants is a resident of this judicial district.

## THE UNDERLYING LAWSUIT

6. On or about October 9, 2018, Bankers Standard filed a Complaint against Highlander Construction, Inc. ("Highlander"), Bryan D. Ogdon Ltd. ("Ogdon"), Arc Insulation, Inc. ("Arc"), Northridge Builders, Inc. ("Northridge"), and DKH, which is currently pending in the Circuit Court of Cook County, Illinois ("*Avedisian* Lawsuit").

7. A Second Amended Complaint was filed in the *Avedisian* Lawsuit on March 13, 2020. (A true and correct copy of the *Avedisian* Lawsuit is attached hereto as **Exhibit A.**)

8. The *Avedisian* Lawsuit arises out of a November 22, 2016 fire at the residence located at 410 Sheridan Road, Winnetka, Illinois ("Property"), which purportedly resulted from faulty workmanship at the Property. (Ex. A.)

9. The *Avedisian* Lawsuit alleges that the fire occurred on November 22, 2016 and broke out in a wall cavity behind a fireplace located between the master closet and the master sitting room. (Ex. A, ¶ 14.)

10. The *Avedisian* Lawsuit alleges that the fire caused heavy smoke and water damage to real and personal property at the Property. (Ex. A, ¶ 14.)

11. The *Avedisian* Lawsuit alleges that Bankers Standard (which had allegedly issued a homeowner's insurance policy to the owner of the Property) has allegedly paid $3,930,253.46, for which it now seeks recovery in the *Avedisian* Lawsuit. (Ex. A, ¶ 28.)

12. The *Avedisian* Lawsuit alleges that the cause of the fire was conduction of heat from the fireplace's firebox to the cellulose insulation and wood framing that were added on the back side of the chimney. (Ex. A, ¶¶ 15-16.)

13. The *Avedisian* Lawsuit further alleges that, per building standards, the minimum clearance from the inside surface of the firebox to any combustible material should be twelve inches, including eight inches of solid masonry and a four inch air gap. (Ex. A, ¶ 18.)

14. The *Avedisian* Lawsuit alleges that, at the time of the fire, the combustible framing and insulation were in direct contact with the concrete in the rear of the fireplace. (Ex. A, ¶ 19.)

15. The *Avedisian* Lawsuit further alleges that, at the time of the fire, the framing was located just five inches from the inside surface of the firebox with no air gap. (Ex. A, ¶ 20.)

16. The *Avedisian* Lawsuit also alleges that, at the time of the fire, screws were used to attach the wood framing to the concrete, and these screws increased the conduction of heat from masonry to wood. (Ex. A, ¶¶ 21-22.)

17. The *Avedisian* Lawsuit further alleges that Highlander performed framing work in the area where the fire occurred. (Ex. A, ¶ 23.)

18. The *Avedisian* Lawsuit further alleges that Ogdon installed drywall in the area where the fire occurred. (Ex. A, ¶ 24.)

19. The *Avedisian* Lawsuit alleges that Arc installed insulation in the area in which the fire occurred. (Ex. A, ¶ 25.)

20. The *Avedisian* Lawsuit further alleges that Northridge served as the builder and general contractor on the Property. (Ex. A, ¶ 26.)

21. Count I of the *Avedisian* Lawsuit asserts a claim for negligence against Highlander, alleging that Highlander improperly installed framing such that it was in direct contact with the rear of the fireplace, failed to provide sufficient clearance between the fireplace and the framing, failed to provide an air gap, improperly used screws to attach the framing, failed to inspect its work, and was otherwise careless or negligent. (Ex. A, ¶¶ 30-34.)

22. Count II of the *Avedisian* Lawsuit asserts a claim for negligence against Ogdon, alleging that Ogdon improperly attached furring strips directly to the chimney and failed to properly inspect its work. (Ex. A, ¶¶ 35-39.)

23. Count III of the *Avedisian* Lawsuit asserts a claim for negligence against Arc, alleging that Arc improperly installed insulation such that it was in direct contact with the concrete in the rear of the fireplace, failed to provide proper clearance between the insulation it installed

and the inside surface of the fireplace, failed to provide an air gap, and failed to properly inspect its work. (Ex. A, ¶¶ 40-44.)

24. Count IV of the *Avedisian* Lawsuit asserts a claim for negligence against Northridge, alleging that Northridge failed to properly inspect the construction work to ensure that the framing was properly installed, that there was sufficient clearance between the framing and the fireplace, that there was a proper air gap, that the insulation was properly installed, and that the furring strips were not attached directly to the chimney. (Ex. A, ¶¶ 45-49.)

25. Count V of the *Avedisian* Lawsuit asserts a claim for successor liability against DKH. (Ex. A, ¶¶ 50-84.)

26. Specifically, Count V of the *Avedisian* Lawsuit alleges that Northridge was an Illinois corporation established in 1993. (Ex. A, ¶ 51.)

27. Count V of the *Avedisian* Lawsuit alleges that the sole shareholder of Northridge until October 2008 was David Knecht ("Knecht"). (Ex. A, ¶ 52.)

28. Count V of the *Avedisian* Lawsuit alleges that DKH was organized in October 2012, and the initial members of DKH were allegedly Knecht and Mario Cirignani. (Ex. A, ¶¶ 66-67.)

29. Count V of the *Avedisian* Lawsuit further alleges that, since its inception in 2012, DKH has maintained its principal office at 15 Spinning Wheel Road, in Hinsdale, Illinois, the same location that Northridge had allegedly operated. (Ex. A, ¶ 68.)

30. Count V of the *Avedisian* Lawsuit alleges that, between January and March 2013, DKH hired all of Northridge's employees except for Karen Knecht, including project managers and others previously employed by Northridge. (Ex. A, ¶ 69.)

31. Count V of the *Avedisian* Lawsuit further alleges that, in January 2014, Knecht and Karen Knecht ratified a wind-down of Northridge. (Ex. A, ¶ 70.)

32. Count V of the *Avedisian* Lawsuit further alleges that, in March 2014, Knecht was replaced as 50% owner of DKH by Auburn Holdings LLC (of which Knecht was the sole member), and Cirignani was replaced by Lamar Holdings, LLC (of which Cirignani was the sole member). (Ex. A, ¶ 71.)

33. Count V of the *Avedisian* Lawsuit alleges that *Northridge* was administratively dissolved in September 2015. (Ex. A, ¶ 72.)

34. Count V of the *Avedisian* Lawsuit alleges that, since establishing DKH, Knecht ceased building homes under Northridge and began building under DKH. (Ex. A, ¶ 73.)

35. Count V of the *Avedisian* Lawsuit also alleges that DKH has contracted with many of the same tradesmen, subcontractors, suppliers, and other vendors which had formerly contracted with Northridge. (Ex. A, ¶ 74.)

36. Count V of the *Avedisian* Lawsuit alleges that the DKH website displays homes built by Northridge, including a photo of Avedisian's home. (Ex. A, ¶ 75.)

37. Count V of the *Avedisian* Lawsuit further alleges that, in 2008, Knecht allegedly transferred his shares of Northridge to the Karen M. Knecht Trust, which allegedly included a provision that in the event of stock or ownership interest in Northridge is included in the trust assets, the trustee shall entrust Karen Knecht to manage Northridge. (Ex. A, ¶¶ 58-60.)

38. Count V of the *Avedisian* Lawsuit alleges that, following the 2008 transfer to the Karen M. Knecht Trust, Knecht allegedly continued to act as president and director of Northridge, and no control was given to Karen Knecht. (Ex. A, ¶¶ 61-64.)

6

39. Count V of the *Avedisian* Lawsuit further alleges that, notwithstanding various transfers, DKH is nothing more than a continuation and/or reincarnation of Northridge and is therefore liable for the negligent acts of Northridge, as described above. (Ex. A, ¶¶ 79-84.)

## THE NAUTILUS POLICY

40. Nautilus issued a commercial general liability insurance policy to DKH through policy number PN013649 for the policy period of November 21, 2016 to November 21, 2017 ("Policy"). The Policy provides, among other things, commercial general liability coverage subject to a $1,000,000 limit of liability per occurrence, a general aggregate limit of $2,000,000, and a products/completed operations aggregate limit of $2,000,000. (A true and correct copy of the Policy is attached hereto as **Exhibit B.**)

## COUNT I

## THE *AVEDISIAN* LAWSUIT DOES NOT ALLEGE A CLAIM FOR "PROPERTY DAMAGE" CAUSED BY AN "OCCURRENCE" AGAINST DKH

41. Nautilus adopts and realleges the allegations in paragraphs 1 through 40 of its Complaint for Declaratory Judgment as paragraph 41 of Count I of its Complaint for Declaratory Judgment as if fully set forth herein.

42. The Policy provides in relevant part, the following with respect to the liability coverage afforded therein:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
\* \* \*

**SECTION I- COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage"

7

> to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. * * *
>
> * * *
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> **(2)** The "bodily injury" or "property damage" occurs during the policy period; and
>
> * * *
>
> **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".
>
> * * *

(Ex. B.)

43. The Policy defines the terms "occurrence" and "property damage" as follows:

**SECTION V – DEFINITIONS**
* * *

> **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> * * *
>
> **17.** "Property damage" means:
>
> **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
> * * *

(Ex. B.)

44. Here, the sole claim asserted against DKH arises out of a theory of successor liability. (Ex. A.)

45. There are no allegations that DKH performed and/or supervised any of the construction work that ultimately resulted in the fire.

46. A claim for successor liability does not constitute a claim for "property damage" arising out of an "occurrence" as those terms are defined in the Policy.

47. Illinois law is clear that where a claimant seeks damages arising solely out of successor liability (and, as such, the insured cannot be held liable for *its own* conduct but rather its affiliation with a predecessor entity), no insurance coverage is owed for that successor liability claim.

48. Accordingly, Nautilus owes no duty to defend and/or indemnify DKH for the claims asserted in the *Avedisian* Lawsuit.

49. An actual controversy exists between Nautilus, DKH, and Bankers Standard, and, by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

    a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

    b. Find and declare that the *Avedisian* Lawsuit does not allege a claim for "property damage" caused by an "occurrence" against DKH;

    c. Find and declare that the Policy provides no coverage for claims solely arising out of a theory of successor liability against DKH;

    d. Find and declare that Nautilus has and had no duty under the Policy to defend DKH against the *Avedisian* Lawsuit, or to indemnify DKH for any judgment or settlement entered therein; and

e. Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT II

### THE POLICY'S "YOUR WORK COMPLETED PRIOR TO SPECIFIED DATE" EXCLUSION BARS COVERAGE FOR THE CLAIMS ASSERTED IN THE *AVEDISIAN* LAWSUIT

50. Nautilus adopts and realleges the allegations in paragraphs 1 through 49 of its Complaint for Declaratory Judgment as paragraph 41 of Count I of its Complaint for Declaratory Judgment as if fully set forth herein.

51. The Policy incorporates the following exclusion relating to work completed prior to a specified date:

**EXCLUSION – YOUR WORK COMPLETED PRIOR TO SPECIFIED DATE**
\* \* \*

**SCHEDULE**

**Date:** 11/21/2012

A. The following exclusion is **added** to **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to "bodily injury" or "property damage" included on the "products-completed operations hazard" and arising out of "your work" that was completed by or on behalf of any insured prior to the date shown in the Schedule.

B. We will have no duty to defend any insured against any loss, claim, "suit" or other proceeding seeking damages for "bodily injury" or "property damage" arising out of "your work" that was completed by or on behalf of any insured prior to the date shown in the Schedule.
\* \* \*

(Ex. B.)

52. On information and belief, the Property was constructed in 2008 and all work performed by Northridge was completed prior to November 21, 2012.

10

53. Accordingly, because the work that Northridge and/or DKH performed on the Property was concluded before November 21, 2012, the "Your Work Completed Prior to Specified Date" Exclusion bars coverage for the claims asserted in the *Avedisian* Lawsuit.

54. An actual controversy exists between Nautilus, DKH, and Bankers Standard, and, by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

b. Find and declare that the "Your Work Completed Prior to Specified Date" Exclusion bars coverage for the claims asserted in the *Avedisian* Lawsuit;

c. Find and declare that Nautilus has and had no duty under the Policy to defend DKH against the *Avedisian* Lawsuit, or to indemnify DKH for any judgment or settlement entered therein; and

d. Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

**TRAUB, LIEBERMAN, STRAUS & SHREWSBERRY LLP**

By: <u>/s/ Dana A. Rice</u>

Dana A. Rice
Adam P. Joffe
303 W. Madison Street
Suite 1200
Chicago, IL 60606
P: 332-3900
F: 312-332-3908
drice@tlsslaw.com
ajoffe@tlsslaw.com

**ATTORNEYS FOR
NAUTILUS INSURANCE COMPANY**